# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 30, 2010 Session

## LESLIE LOUISE MILLER  v. JEFFREY TODD MILLER

**Appeal from the Circuit Court for Greene County**
**No. 08CV784      Kindall T. Lawson, Judge**

---

**No. E2009-02252-COA-R3-CV - FILED SEPTEMBER 28, 2010**

---

Leslie Louise Miller ("Wife") filed this action for divorce. Jeffrey Todd Miller ("Husband") coupled a counterclaim for divorce with his answer. Wife admitted inappropriate marital conduct in her answer. The parties had been married for 15 years and had two minor children. They stipulated to a division of all of their property except the marital residence, about which there remained unresolved issues. After three days of trial, the court granted Husband a divorce on the grounds of inappropriate marital conduct. The court awarded him the marital residence and ordered him to pay Wife one half of the equity, which the court determined to be $47,092.50, minus $4,500 representing that portion of Husband's attorney's fees assessed to Wife. The court awarded "primary parentage" of the children to Husband and gave Wife, a teacher at the children's school, parenting time limited to every other weekend and one weeknight every week. Wife appeals. The judgment of the trial court is affirmed in part and vacated in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Jerry W. Laughlin, Greeneville, Tennessee, for the appellant, Leslie Louise Miller.

Edward Kershaw, Greeneville, Tennessee, for the appellee, Jeffrey Todd Miller.

### OPINION

I.

A.

Wife and Husband were married on May 14, 1994. Their daughter McKenzie was born April 17, 2001, and was eight years old at the time of trial. Their son Derek was born September 15, 2004, and was then nearly five. Both spouses have worked throughout their marriage. Wife obtained her teaching certificate in elementary education and started teaching in 1999. As previously noted, she teaches at the school her children attend.

In the fall of 1994, the parties started building a home on 1 1/4 acres of land deeded by Husband's parents. Husband contributed $18,000 toward the construction of the house – money he had obtained through a workers' compensation settlement. Wife's father was a builder and helped with construction but both families "pitched in" and built the house with the help of some independent contractors. Eventually, Wife's mother supplied approximately $48,000 that was deposited in a joint account and then paid toward improvements on the marital home. Both parties lived in the marital home until the judgment of divorce was entered, and each asked to be awarded the residence with an equitable share payment to the other. The parties stipulated that the value of the home at the time of trial was $187,900, and further stipulated that the party awarded the home would also be responsible for the following debts: first mortgage of $34,000; home equity loan of $49,000 and credit card debt of $11,500.

Even though Wife admitted inappropriate marital conduct, the bulk of the proof at trial concerned the number and duration of Wife's affairs. Husband had filed a previous action for divorce which he dismissed after the parties reconciled. During the pendency of that first action, Wife signed an affidavit denying an affair with a co-teacher named Bandy Thompson. It was this affair that she later admitted, but she claimed, and so testified, that it ended in 2007 before the first divorce action was terminated. Husband called Thompson as a witness. He testified that the affair lasted until October 2008, when Wife began a relationship with another man named Scott Reaves. Reaves appeared as a witness for Wife and denied that he and Wife had an affair. Husband introduced cell phone bills showing regular and lengthy conversations with Thompson lasting until approximately October 2008. The cell phone bills also showed regular and lengthy conversations with Reaves beginning about the time the conversations with Thompson ended. Husband also introduced a note from Wife to Thompson containing references to her efforts to get away from Husband and the children to meet him.

Wife always had her sexual liaisons away from the marital home. There is no direct evidence that marital strife or Wife's infidelity had an adverse impact on the children. The

only evidence that related Wife's activity to the children in any way was that on one occasion Wife had one of the children in the automobile with Mr. Reaves. There was testimony from Husband that, on one occasion, Wife took some pills and drove off in her car. Wife admitted picking up a bottle of nausea medication and standing at a counter in the bathroom, but denied taking any of the pills for fear that Husband would use that against her in the divorce. Husband testified that, almost as soon as she left, he called 911 out of concern, and that, a few minutes later, she returned home and walked past him, exhibiting no evidence that she had abused the use of the medication.

Husband admitted that up until the time he became suspicious of Wife's activities, she was the main caregiver of the children. She bought their clothing, gave them their baths, dressed them, took them to medical appointments, gave them their medicines, drove them to school, took them to outside activities and cooked their meals. Husband claimed to have become more involved beginning in 2007. Wife admitted that she noticed Husband's recent efforts to become more involved with the children.

Husband admitted that there were time constraints on his availability to care for the children. He acknowledged relying upon his parents for help. Husband cannot cook and has never prepared a full meal for the children. Husband must leave for work before 6:00 a.m. Husband's father and mother, who are retired, testified that they are willing and able to be at their son's home when he leaves for work, in order to wake and feed the children and get them off to school. They live within a few miles of Husband on the family farm out of which they had carved the small parcel for their son and his wife. Husband's father is elderly and has recently faced heart surgery, although he testified that he is now feeling and doing fine.

Wife called numerous witnesses to talk about her close and wonderful relationship with the children. As we have indicated, other than her distractions with men, which obviously required some of Wife's time and attention, there is nothing to indicate that Wife has ever been anything but a devoted, loving and caring mother.

B.

At the end of the proceedings, the trial court noted that

> his work schedule[] requires him to get up real early and go to work early before the children do. So therefore, he doesn't do breakfast and take them to school and that sort of thing. Mother is better able to do that. She has been better at it and still would be better to do that.

The trial court stated that it was concerned because both of the men with whom Wife had relationships had experienced problems with the law. Thompson was charged with driving under the influence on what he stated was the last night of the physical relationship with Wife. He pleaded guilty to a lesser charge. At the time of trial, Reaves was in jail for failure to appear, contempt of court, and a probation violation. The core of the trial court's reasoning was as follows:

> Well, if it were not for the fact that it began with the credibility of the mother so under attack and destroyed, and if were not for these affairs and the character of the men involved, and there's another – because of her education which the Court notes. Her work schedule, which the Court notes. The fact that she has been the primary actual caregiver, she would normally have really a hands up or leg up in terms of being the custodial parent, primary parent. But the Court finds that she has demonstrated and actually placed her relationship with these men over the children by leaving them and going out at night and leaving them with their father which she has done, that even though it's a difficult case for the Court to decide, I find that it is in the best interest of these children everything considered; the father hasn't done anything in terms of deserting the children, leaving them inappropriately or disrupting the family unit in any way, and I think the children everything considered and all factors weighed set out in the law, the Court finds it's in the best interest of the children that the father be the primary parent and the Court will adopt and accept his plan.
>
> The divorce is granted to the father on the grounds of inappropriate marital conduct. . . .
>
> \* \* \*
>
> The division of the property, each party would receive – the father would get the house and the debts that have been discussed before and he's to pay $47,092.50 to the mother. But deducted from that is to be an attorney fee in an amount that Mr. Kershaw can show resulted from the mother's . . . false denial of this affair. Now I'm recognizing that you had to do certain work to prove that affair when she denied it, and whatever

attorney fees were required and other fees that were required that the Court will award if they're appropriate and proper.

In its final judgment of divorce, the court set the amount of Husband's attorney's fees – to be deducted out of Wife's share of the equity in the marital home – at $4,500. The particular findings of interest on this appeal are as follows:

> The Court finds that this case was heavily pursued by Father and inures to the benefit of the children in this cause. Specifically, the Court finds that a lengthy portion of this case required Husband to put forth efforts to show that Wife was indeed involved in two affairs and at the conclusion of the cause the Court does in fact find that Wife was involved in two affairs one of which Wife denied. The Court awards attorney fees to Husband in the amount of $4,500 because of the work that was put into this case inuring to the benefit of the minor children[.]

> The major issue in this cause was primary parentage over [the children]. The Court has reviewed numerous factors including those elucidated at T.C.A. 36-6-106. The Court finds that both patents have love and affection for their minor children, however, the Court specifically finds that Mother made a choice to interrupt the family unit around January 2007 and continuing until at least the Spring of 2009 and to put her relationship with two men above her relationship with the children. The Court further finds that Mother lied under oath to the Court about her relationship with both men[.]

> The Court finds that Mother has no credibility given the fact that she has lied under oath in an Affidavit and that she has further lied to the Court about her continuing relationship[.]

> The Court finds that Mother has been more disposed to provide the children with food, clothing, medical care, education, and other necessary care until such time as she chose to put her own interests above those of the children during which time she began having an affair with different men. The Court finds that while Mother has been more disposed to care for the children, Father has also been a good, attentive, loving Father[.]

The Court finds that it is important for the children to maintain stability. The Court has listened to Father and Father's family and the Court finds that stability will be maintained by the children residing primarily with Father at the residence which is part of the Father's family farm[.]

The Court finds that the mental and physical health of Mother is questionable. First the Court finds that Mother has lied under oath to the Court and lacks credibility. Furthermore, the Court finds that Mother was involved in an incident on August 11, 2009 which involved pills and at least a potential threat to try and commit suicide[.]

The Court finds that on at least one occasion Mother has exposed the children to one of the persons that she has been involved in an inappropriate relationship with and that this was not appropriate[.]

Based upon all of the foregoing and based upon the fact that Mother's lack of credibility makes her a poor influence on the children and renders her fundamentally dishonest, the Court finds that it would be in the best interests of these minor children for primary parentage to be placed with the father. The Court therefore adopts the parenting plan that is attached hereto and is fully incorporated herein.

The parenting plan proposed by Husband and adopted *in toto* by the court makes Husband the primary residential parent who receives 245 days with the children as opposed to 120 days with Wife. The plan gives equal holiday time, equal time over Christmas break, and two non-consecutive weeks during the summer to each parent. The rest of the year, Husband has the children except Wife has "Friday at 3:00p.m to Sunday at 6:00 p.m. every other week and every Tuesday from 3:00 p.m. to the next Wednesday at 8:00 a.m." In other words, Wife has parenting time every other weekend and one night a week.

II.

Wife appeals raising the following issues:

Whether the Trial Court erred in determining that [Wife], an elementary school teacher, should only be permitted weekday parenting time for one night every other week during the school year.

Whether the Trial Court erred in refusing to permit [Wife], an elementary school teacher, parenting time with the minor children throughout the week during the summer months, and other school breaks, when both she and the children are out of school.

Whether the Trial Court erred in requiring [Wife] to pay $4,500 in attorney's fees to the attorney for [Husband].

Whether the Trial Court erred in failing to take into consideration the separate funds invested by the [Wife] in the residence when equitably dividing the equity in that residence.

III.

A.

Wife contends that she was punished for having an affair and that the best interest of the children is not served by the severe restrictions on her parenting time. She does not argue that she should have been made the "primary residential parent." She simply argues that it does not make sense to severely restrict her parenting time knowing full well that the children will be left with Husband's parents most of the time they are not with one of their parents. Because these arguments are common to both the first and second issues, we combine our discussion.

The central concern in any custody and visitation ruling is the best interest of the children. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). The interest of the parents are secondary. *Id*. "Custodial arrangements should not be made with the goal of punishing a parent for misconduct. Nonetheless, misconduct of a party does often reflect fitness of the parent for custody and is a proper consideration." *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991)(citations omitted). The "details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(*quoting Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, a trial court's order concerning custody and visitation will not be reversed absent a showing that the court abused its

discretion. *Id*. An abuse of discretion should be found only when the trial court's ruling "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88 (citations omitted).

There are 16 statutory factors, including a "catch-all," that a trial court "shall consider" in establishing a parenting plan and residential schedule for a child. Tenn. Code Ann. § 36-6-404(b)(2005). Those factors are:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

*Id*.

Husband argues that this case is controlled by ***Carden v. Carden***, No. 01A01-9502-CH-00042, 1995 WL 689728 (Tenn. Ct. App. M.S., filed Nov. 22, 1995). In ***Carden***, the trial court awarded custody of two minor children to Mr. Carden. Mrs. Carden appealed, arguing that she should have received custody, but was punished for having an affair. This Court affirmed the trial court's custody determination on the ground that, based on comparative fitness, the evidence did not preponderate against the trial court's decision that Mr. Carden was the better parent to have custody. We noted that the trial court was justified in taking into account Mrs. Carden's dishonesty. *Id*. at *4. There is no discussion in ***Carden***

regarding the parenting time, or visitation schedule, awarded to Mrs. Carden, but it is apparent that Mrs. Carden was to have liberal visitation. In fact, this Court admonished Mr. Carden that he was to do nothing to diminish or interfere with the relationship between Mrs. Carden and her children. *Id*. We specifically noted that the young children needed "a female role model at this stage in their lives." *Id*. This is in accord with the edict that a parenting plan should promote a strong relationship with both parents. Tenn. Code Ann. § 36-6-404(b); *see **Bah v. Bah***, 668 S.W.2d 663, 667 (Tenn. Ct. App. 1983). We also noted that Mrs. Carden's problems did not render her an unfit mother by any stretch; either parent could have suitably served "as the custodial parent for their daughters." ***Carden,*** 1995 WL 689728 at *4. ***Carden*** certainly supports the trial court's designation of Husband as the primary residential parent in this case. However, ***Carden*** is of no precedential value on the issue of Wife's co-parenting time.

We agree with Wife that her scheduled parenting time make little sense under the circumstances of this case. There is no finding that she is an unfit mother. There is no finding that her affairs, or her distractions with men other than her Husband, have caused an adverse impact on the children.[1] The parenting plan essentially makes Husband's parents the de facto parents of the children through the week and the summer months. There is no dispute that Husband has historically had limited involvement in seeing to many of the day-to-day needs of the parties' young children. There is no dispute that, under the parenting plan, Husband's work schedule means someone other than a parent must wake the young children, see that they are fed and dressed, and see them off to school. Since Husband cannot cook, other than a snack, he must rely on his parents and others to cook for the children. This is all being done by a non-parent when the Wife, whom the trial court found has been more disposed to render such care to the children in the past, is available and asking for more time with her children.

The compelling statutory factor that the parenting schedule ignores, despite the trial court's acknowledgment of the parties' respective schedules, is that Wife's schedule is much more conducive to liberal time with and care of the children during the school week, whereas Husband's work schedule makes it impossible for him to personally spend time with and care for the children on school mornings . Further, during the summer, Wife is off the same time as the children, and Husband must continue his 6:00 a.m. to 4:00 p.m. shift work. Therefore, we find that the parenting schedule constitutes an abuse of discretion.

---

[1]We do not in any way condone Wife's actions. She is on notice that, if future improper conduct on her part adversely impacts the children in a way that amounts to a change in circumstances, she may well be subject to unwanted consequences.

We have considered the factors with particular attention to the schedule of the parents and conclude that the parenting schedule must be modified to take into consideration the respective work schedules. We conclude that the bulk of the parenting time through the week should be shifted to Wife, and the bulk of the parenting time on the weekends should be shifted to Husband. We also believe that considerably more parenting time through the summer and any appreciable breaks in the school year should be with Wife. It is in the best interest of the children that this time should be with Wife rather than Husband's parents. [2] While we will leave it to the trial court to work out the details on remand in consultation with counsel, we hold (1) that the holiday schedule shall remain unchanged; (2) that the children shall reside with Husband three consecutive weekends – a weekend being defined as from 4:30 p.m. Friday to 6 p.m. on Sunday – and then with Wife the next weekend with the same days and hours; (3) that during the school year the children shall reside with Wife from 6:00 p.m. on Sundays to 4:30 p.m. Friday, except the children shall be with Husband from 4:30 p.m. to 8:00 p.m. two nights a week provided he shall be responsible for transporting the children to and from Wife on these two week nights; and (4) the children shall reside with Wife and Husband an equal amount of time during summer, spring and fall breaks from school.

B.

Wife also argues that the trial court erred in awarding Husband $4,500 in attorney fees. Wife's contends that there is a disconnect between what the court announced from the bench and what it ordered in its judgment. From the bench, the court stated that it would award "an amount that [Husband's attorney] can show resulted from [Wife's] denial, false denial of this affair." In its judgment, the court found that "a lengthy portion of this case required Husband to put forth efforts to show that Wife was indeed involved in two affairs . . . one of which Wife denied," and that Husband's efforts inured "to the benefit of the minor children." The first seems to relate to the cost of dissolving the marriage whereas the second relates to securing custody. Wife also contends that there was no hearing or submission of evidence from which the court could have made findings in support of the award. Husband admits there was no affidavit or other presentation of evidence, but argues that the three day trial lasting 20 hours with 13 witnesses is proof enough. In fact, Husband asks that we increase the award by $5,000 for the work done on appeal.

---

[2]This is no reflection on Husband's parents. It is simply a recognition that they are grandparents and not the children's parents.

Attorney fees are awarded "in the discretion of [the] court" with some limitations. Tenn. Code Ann. § 36-5-103 (c)(2005)[3]. We review for an abuse of discretion. *See e.g. Elliott v. Elliott*, 825 S.W.2d 87, 92 (Tenn. Ct. App.1991). The amount must be reasonable, and the fees must relate to issues of custody or support as opposed simply to dissolution of the marriage. Tenn. Code Ann. § 36-5-103(c). The attorney's work in securing the award must ultimately inure to the benefit of the minor children. *Dalton v. Dalton*, 858 S.W. 2d 324, 327 (Tenn. Ct. App. 1993). Where the parenting arrangement on which the award of fees is based is reversed on appeal, it is seldom proper to affirm the award of attorney's fees. *Placencia v. Placencia*, 3 S.W.3d 497, 504 (Tenn. Ct. App. 1999); *Tarkington v. Tarkington*, No. M2002-01914-R3-CV, 2003 WL 22251339, at *4 (Tenn.Ct.App. M.S., filed Oct. 2, 2003). A party who does not prevail on appeal with regard to the parenting arrangement, will not be awarded fees on appeal. *See Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997). It is not always necessary that there be a "fully developed record" when the judge that presided over the case is asked to award attorney fees, but it is necessary that the party being made to pay have "been afforded a fair opportunity to cross-examine the requesting parties' witnesses and to present proof of its own on the issue." *Sherrod v. Wix*, 849 S.W. 2d 780, 785 (Tenn. Ct. App. 1992).

In light of the above principles, we must decline Husband's request to award his attorney's fees on appeal. We also see several problems that amount to an abuse of discretion in the award of fees by the trial court. By Husband's admission, there was not even so much as an affidavit that set forth the rate and the total hours spent, much less the amount of effort devoted to custody as opposed to dissolution of the marriage. There was obviously no opportunity to "cross-examine" Husband's missing proof or offer countervailing evidence. For these reasons, and because we have altered the parenting arrangement to an extent that it might impact the determination of how much the work of Husband's attorney really inured to the benefit of the children, we vacate the trial court's

---

[3] This statutory section states:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

*Id*.

award of fees and remand to the court to hold a hearing with regard to the issue of whether Husband's counsel is entitled to fees and expenses, and, if so, how much the award should be.

C.

Wife also challenges the trial court's division of the equity in the marital residence, arguing that she put more of her own money into the home therefore she should take more out. A trial judge has wide discretion in fashioning an equitable division of marital property, and we accord great weight to that division. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001). The process is not mechanical, but there are factors set out in Tenn. Code Ann. § 36-4-121(c) (2005) that the court must consider. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). Those factors are:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121 (c). Equity does not require that the award to each party be equal. ***Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

We have examined the division of property in light of the statutory factors and find no abuse of discretion. This marriage lasted fifteen years and the house was built soon after the parties married. The house is no doubt marital property, including everything "pitched in" by both spouses and their parents. Husband's parents, for example, contributed land. Wife's mother contributed money, as did Husband. Even if we were inclined or empowered to second-guess the trial court, which we are not, we could devise nothing more equitable than simply dividing what is left after payment of the debts. We hold that the trial court did not abuse its discretion in its division of the equity in the marital home.

IV.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment that incorporates the parenting plan adopted by the trial court is vacated. On remand, the court will hold a hearing and adopt a parenting plan in accord with and consistent with our opinion. That part of the judgment awarding Husband attorney's fees of $4,500 is vacated and this case remanded for a determination of whether to award fees and expenses in light of the modification of the parenting plan, and, if so, a determination of reasonable fees and expenses incurred on the issue of custody that inured to the benefit of the children. That part of the judgment that awarded Wife one-half the equity in the marital residence amounting to $47,092.50 is affirmed. Costs on appeal are taxed to Husband. This case is remanded to the trial court, pursuant to applicable law, for proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE