IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2018

## SAMRAT MITRA v. SUNEETHA IRIGREDDY

**Appeal from the Circuit Court for Shelby County**
**No. CT-003134-14      Mary L. Wagner, Judge**

─────────────

### No. W2017-01423-COA-R3-CV

─────────────

This appeal involves a contentious dispute over visitation and child support for the parties' minor child. Having carefully reviewed the voluminous record before us, we hold that the evidence supports the parenting plan determination and other rulings made by the court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and FRANK G. CLEMENT, P.J., M.S., joined.

Jennifer Sheppard, Nashville, Tennessee, for the appellant, Samrat Mitra.

Margaret M. Chesney and Rebecca A. Bobo, Memphis, Tennessee, for the appellee, Suneetha Irigreddy.

### OPINION

### I. BACKGROUND

Suneetha Irigireddy ("Mother") and Samrat Mitra ("Father"), who are of Indian descent, were married in India in 2002. Mother and Father (collectively "the Parties") moved to North Carolina on a work visa for employment secured by Father. Stuti ("the Child") was born in February 2007 in North Carolina. Father continued working, while Mother and the Child traveled to India in May 2008. Father followed shortly thereafter when his work contract ended in June 2008. While in India, Mother and the Child stayed

with her parents, while Father stayed with his parents.[1]  The two families lived a significant distance apart.  Father visited at Mother's home on occasion, while Mother and the Child visited Father on occasion.  Father remained in India until November 2008, when he accepted an employment position in Canada.  Mother followed shortly thereafter in December 2008; however, the Child remained in India with the maternal grandparents because the Parties had not yet established a home in Canada.  The Child joined the Parties in June 2009, when she was two years old.

The Parties then returned to the United States in January 2010 to maintain their immigration status.  Mother accepted employment in North Carolina, while Father searched for employment for several months before eventually moving to Texas for a job opportunity in Fall 2010.  He visited Mother and the Child twice in 2010, with the last visit occurring in December 2010.  At that point, the marital relationship had deteriorated. Father returned to North Carolina in February 2011 in an attempt to visit the Child.  He did not advise Mother of his intent, and he did not attempt to contact her.  Instead, he waited outside of Mother's apartment with a gift for the Child.  No visit occurred because they either were not home or were unaware of his presence.  Thereafter, Father eschewed Mother's attempts to arrange visitation and advised her that he was "happy to be alone" and that he did not wish to receive further contact from her.  At some point, Mother moved to Memphis, Tennessee.

Father did not see the child from December 2010 until July 31, 2012, when he again appeared at Mother's apartment unannounced in Memphis.  By that time, Father had filed for and obtained a divorce in Texas.  Father was able to visit the Child; however, the visit did not go well given his long absence from her and failure to communicate while absent.  Father returned to Texas.  The Parties communicated via email but were unable to come to terms regarding future visitation.  Father then sent an email in September 2012, which provided, in pertinent part, as follows:

> Neither of you have to take the pain to let me meet your daughter, Stuti Irigireddy,[2] at your home in Tennessee, nor do you have to bring her here in Austin on the holidays.  YOU CAN KEEP HER!

* * *

---

[1] Testimony later revealed that Father's refusal to stay at the maternal grandparents' house was in deference to a cultural norm that ordinarily required the family to stay with the paternal grandparents and discouraged the husband from residing with the maternal side of the family.

[2] Father's reference to the Child using Mother's maiden name was an insult in their culture.

Thanks for everything, but after my last visit to Memphis, I've really changed my mind - Neither am I willing to go see your daughter Stuti Irigireddy again, nor am I willing to take her out anywhere.

In April 2013, Mother took the Child to India to reside with the maternal grandparents, while Mother obtained and maintained employment in New Jersey. She visited every six months and spoke to the Child on a daily basis. Mother began custody proceedings while in India. She returned to the United States with the Child in February 2015, following Father's filing of a petition for custody and injunctive relief on July 18, 2014, in the Circuit Court for Shelby County. Upon their return, Mother was designated as the temporary, primary residential parent and was required to enroll the Child in school in New Jersey. The Parties were also ordered to attend counseling sessions in Tennessee to aid in the Child's reunification with Father.

Meanwhile, Mother objected to the trial court's jurisdiction, citing the fact that neither party resided in Tennessee and that the Child had not resided in Tennessee since April 2013. The Parties later consented to the trial court's jurisdiction, and the court confirmed its subject matter jurisdiction over the pending custody and child support issues. Mother did maintain a request for transfer of jurisdiction following the resolution of the proceeding.

The case proceeded to a hearing over the course of two days in January 2017, at which the Parties testified concerning their tumultuous relationship and their difficulty in reaching an agreement concerning Father's visitation. The Parties also submitted documentation establishing their income since their separation. The record reflects that Father maintained an income of approximately $110,000 per year, while Mother maintained an income of approximately $98,623 to $110,000 per year from 2014 through 2017. The Parties each offered conflicting accounts of the other's attempt to facilitate or impede Father's participation with the Child. Father also claimed that the Child was not doing well in school, while Mother submitted documentation establishing that the Child had progressed and was in the process of overcoming the challenges of learning in the United States with English as her second language.

Following the hearing, the court designated Mother as the primary residential parent and awarded Father with 100 days of co-parenting time, the majority of which was scheduled during the Child's breaks from school. The court also limited international travel to two weeks, absent permission from the other parent or the court, but allowed Mother to maintain possession of the Child's passport. The court ordered Father to pay child support at a rate of $935 per month and set his child support arrearage at $33,298, in light of the Parties' agreement that Father had remitted some payment, beginning in

2015.[3] The court awarded Mother attorney's fees in the amount of $20,000. Father did not object to the amount set by the trial court and waived a hearing on the issue. The court ordered Father to remit payment on the child support arrearage and attorney fee award at the combined rate of $750 per month until such time as the outstanding balances are fulfilled. Lastly, the court declined Mother's request for transfer of jurisdiction at the conclusion of the proceeding, explaining that jurisdiction would be evaluated in the event that either party needed a subsequent proceeding. Father filed this timely appeal.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the court erred in denying Mother's request to transfer jurisdiction to the Child's current home state at the conclusion of the hearing.

B.      Whether the court erred in setting the residential schedule and limiting international travel.

C.      Whether the court erred in calculating child support.

D.      Whether the court erred in awarding Mother attorney's fees.

E.      Whether either party is entitled to attorney's fees on appeal.

## III.    STANDARD OF REVIEW

This case was tried without a jury. We review the findings of fact made by the trial court de novo, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 731 (Tenn. 2005). The trial court's conclusions of law, however, are reviewed de novo and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

---

[3] Father was not given a credit for co-parenting time for 2011 through 2013 because he chose not to see the Child during those years. He was not held responsible for child support while the Child resided in India with the maternal grandparents. He was awarded credit for co-parenting time from 2014 through 2016 while he was in the process of attempting to secure such time.

- 4 -

## IV. DISCUSSION

### A.

Mother resided in Tennessee when the initial petition was filed by Father on July 18, 2014. Shortly thereafter, Mother moved to New Jersey. The Parties eventually consented to the court's jurisdiction of the matter as litigation progressed. However, Mother requested a transfer of jurisdiction upon the court's conclusion of the proceeding. The court declined, stating that it would decide matters of continuing jurisdiction should the need arise. Mother appeals this finding, while Father concurs with the court's decision to consider the matter anew should the need arise.

The issue of subject matter jurisdiction, which "call[s] into question the court's lawful authority to adjudicate a controversy brought before it," is a question of law. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) and *Cheatham Cnty. v. Kong*, No. M2008-01914-COA-R3-CV, 2009 WL 1910952, *3 (Tenn. Ct. App. June 30, 2009) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). Therefore, the review is de novo, without any presumption of correctness. *Kong*, 2009 WL 1910952, at *3 (citing *Northland Ins. Co.*, 33 S.W.3d at 729). Tennessee Code Annotated section 36-6-217 provides as follows:

> (a)     Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> 1)     A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> 2)     A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

We agree with the court's decision to withhold ruling on the issue until the need arises to make such a determination, especially given each parent's propensity to move for employment opportunities.

B.

Mother next challenges the parenting plan adopted by the trial court. Parenting and visitation arrangements are recognized as "among the most important decisions confronting a trial court in a divorce case." *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006). In making such decisions, the needs of the child are paramount, and the desires of the parent are secondary. *Id.* While trial courts have broad discretion to make parenting decisions, their determinations must be made based upon proof and applicable principles of law. *Id.* Given the discretion involved and the fact that the decision often hinges on witness credibility, our court has stated that "appellate courts are loathe to second-guess a trial court's conclusion." *Id.* "Appellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly v. Kelly*, 445 S.W.3d 685, 696 (Tenn. 2014).

Tennessee Code Annotated section 36-6-106(a) provides that, taking into account a child's best interest, the trial court shall adopt a parenting plan that permits each parent to enjoy the maximum participation possible in the child's life that is consistent with the factors set forth in the statute. *See Strickland v. Strickland*, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *10 (Tenn. Ct. App. Dec. 21, 2012). The relationship between the child and each parent should be fostered because of the fundamental importance of the parent-child relationship to the welfare of the child. Tenn. Code Ann. § 36-6-106(a). The location of the parents' residences, the child's need for stability, and all other relevant factors must be considered. *Id.*; Tenn. Code Ann. § 36-6-401(a).

Mother asserts that the current plan allows her little downtime with the Child when Father received a disproportionate amount of the summer and school-free days. She further claims that the court erred in arbitrarily limiting her international travel with the Child to two weeks. Father claims that the court erred in even allowing international travel to India and in allowing Mother to maintain possession of the Child's passport.

While we are sympathetic with Mother's lack of school-free days with the Child, the court properly crafted a plan with the intent of maximizing each parent's participation in the Child's life given the Parties' location and the Child's need for stability. The only way in which to facilitate Father's participation in the Child's life is through visitation on school-free days given his current location in Texas and Mother's location in New Jersey. Accordingly, we hold that the court did not abuse its discretion in awarding Father a disproportionate amount of school-free days. Further, we uphold the court's limitation of international travel for the same reason. In so holding, we note that each party is permitted to request additional time for international travel but is simply not given unfettered discretion to leave the country for an unspecified amount of time. This

limitation is reasonable under the circumstances presented in this case and in light of the court's responsibility to maximize each parent's participation in the life of the Child. Father's objections to Mother's ability to travel to India and her maintenance of the passport are of little concern given the court's limitation on such travel. We uphold the decision of the trial court on these issues as well.

C.

Father raises a number of issues concerning the court's calculation of child support and his support arrearage, while Mother questions the court's failure to award retroactive child support while the Child was living in India with the maternal grandparents. "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A). The setting of child support is a discretionary matter we review using the deferential "abuse of discretion" standard of review, which requires the court "to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

First, Father claims that the court erred in calculating Mother's gross income. According to the child support worksheet, the court calculated Mother's gross monthly income as $8,983.19, which is the gross monthly income for someone earning $107,798.28. This amount was taken from Mother's 2015 W-2. Father claims that the court should have calculated Mother's gross monthly income as $110,000, an amount she testified to at trial, which was based upon two W-2s she submitted to establish her income in 2014. We find no error in the court's calculation of the current child support obligation or Father's support arrearage based upon the record before us.

Father next takes issue with the court's crediting Mother with the additional expenses of the Child's monthly health insurance premium and child care expenses. Father claims that there was no evidence submitted to support Mother's claimed expenses. However, Mother testified concerning these amounts. The court credited this testimony and used the amounts supplied in the child support worksheet. We find no error in the court's calculations for the current child support obligation or Father's support arrearage based upon the record before us.

Father also takes issue with the court's order requiring him to pay his support arrearage and attorney fee obligation at the rate of $750 per month, which represents

$375 for child support and $375 for attorney's fees. Father claims that this obligation, in addition to the current support obligation, equals almost 19 percent of his income, which does not include the cost of facilitating visitation or payment for extracurricular activities and uncovered medical expenses while the Child is in his care. He maintains that such a payment is contrary to the goals of the Child Support Guidelines and not in the best interest of the Child.

The Child Support Guidelines provide, in pertinent part, as follows:

(3) The major goals in the development and application of these Guidelines are, to the extent possible, to:
>    (a) Decrease the number of impoverished children living in single parent families;
>    (b) Make child support awards more equitable by ensuring more consistent treatment of persons in similar circumstances while ensuring that the best interests of the child in the case before the tribunal are taken into consideration;
>    (c) Improve the efficiency of the tribunal process by promoting settlements and by giving tribunals and parties guidance in establishing appropriate levels of support awards;
>    (d) Encourage parents paying support to maintain contact with their child; [and]
>    (e) Ensure that, when parents live separately, the economic impact on the child is minimized, and, to the extent that either parent enjoys a higher standard of living, the child shares in that higher standard[.]

Here, the Parties maintain an almost equal standard of living. However, Father was absent from the Child's life for a significant amount of time, leaving Mother with the sole financial responsibility of raising the Child. While we acknowledge that the arrearage, coupled with the attorney fee award, represents a significant amount of income, Father accrued this arrearage as a result of his absence. The arrearage must be paid in a timely manner. We find no abuse of discretion in the court's calculation of the arrearage or the manner in which Father was directed to remit payment.

Father next claims that he was not given the appropriate amount of credit for past payments of support. Father testified at trial that he left $12,000 in the Parties' joint checking account at the time of the separation. Mother acknowledged that they shared an account and that some money was left by him in the account at the time of the separation. She did not remember the amount he contributed, while Father claimed that the money was left with the specific intent to provide for the Child. No evidence was submitted to

establish the amount Father contributed to the account. The trial court found that the contents of the joint checking account should have been an issue addressed by the court responsible for classifying and distributing the marital estate. Given Father's history of his failure to provide and extended absences from the Child's life, we agree with the trial court's finding on this issue.

Finally, we must address Mother's claim that the court abused its discretion in declining to award support for the period of time that the Child resided in India with the maternal grandparents. Mother argues that Father still had an obligation to support the Child, regardless of her whereabouts. We agree; however, the court is provided a certain amount of discretion in setting the support obligation and may deviate from the guidelines when appropriate. Following our review, we hold that the court did not abuse its discretion in awarding a downward deviation for the period of time that the Child was not in either party's care.

### D. & E.

Father claims that the court abused its discretion by awarding attorney fees and claims that the amount awarded was unreasonable and not supported by the record under the circumstances. He further requests his attorney fees on appeal. Mother claims that Father waived the issue of reasonableness and the payment schedule imposed by the trial court. She also claims that the court improperly limited her award of attorney fees at trial and further requests additional attorney fees on appeal.

An award of attorney fees in custody and child support cases is made "in the discretion of [the] court." Tenn. Code Ann. § 36-5-103(c); *see also Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

A right to recover attorney fees in custody and child support disputes at trial or on appeal was created in Tennessee Code Annotated 36-5-103(c), which provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse
> or other person to whom the custody of the child, or children, is awarded

may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, *in the discretion of such court*.

(Emphasis added.). Additionally, Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees on appeal when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995).

The record reflects that testimony was not presented in support of the request for attorney fees because Father waived a hearing on the issue. The trial court need not have "a fully developed record of the nature of the services rendered" before awarding attorney fees. *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988); *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *11 (Tenn. Ct. App. Feb. 4, 2015). Indeed,

a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be.

*Kahn*, 756 S.W2d at 696 (quoting *Wilson Mgmt. Co. v. Star Distribs.*, 745 S.W2d 870, 873 (Tenn. 1988)). However, the party requesting attorney fees must, at a minimum, provide "an affidavit containing the attorney's hourly rate and time spent on the case."[4] *Coleman*, 2015 WL 479830, at *11 (citing *Miller v. Miller*, 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010)). "Should a dispute arise as to the reasonableness of the fee awarded, then 'in the absence of any proof on the issue of reasonableness, it is incumbent upon the [party challenging the fee] to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue.'" *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002) (quoting *Wilson*, 745 S.W.2d at 873). Father did not raise the issue of reasonableness before filing his notice of appeal. Consequently, reversal of the award is not justified because the record contains no proof that the award of attorney fees was unreasonable. *Id.* We affirm the award of attorney fees in deference to the trial court's

---

[4] An affidavit of attorney fees was provided as required.

discretion in such matters. Exercising our discretion, we also respectfully deny each party's request for attorney fees on appeal.

## V.    CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellee, Suneetha Irigreddy and to the appellant, Samrat Mitra.

_____
JOHN W. McCLARTY, JUDGE