# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 13, 2014 Session

## JENNIFER FURNAS COLEMAN V. MARTY ALAN COLEMAN

**Appeal from the Chancery Court for Shelby County**
**No. CH022091     Arnold B. Goldin, Chancellor**

---

**No. W2011-00585-COA-R3-CV - Filed - February 4, 2015**

---

This is an appeal of attorney's fees in a post-divorce matter. The mother filed a petition to modify the permanent parenting plan and suspend the father's parenting time with the parties' two minor children. The mother incurred around $16,000.00 in legal expenses litigating her petition and then changed attorneys. The parties eventually settled the petition with respect to the visitation issues, but reserved the issue of attorney's fees. Finding that the mother's legal expenses of over $350,000.00 were not reasonable, the Special Master recommended that the father only be required to reimburse the mother for approximately $124,000.00. The trial court decreased the award further, awarding the mother approximately $42,000.00. Mother appeals, arguing that the trial court abused its discretion because all of her attorney's fees were reasonable. Discerning no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

David E. Caywood, Memphis, Tennessee, for the appellant, Jennifer Furnas Coleman.

Bradley Wayne Eskins and James E. King, Jr, Memphis, Tennessee, for the appellee, Marty Alan Coleman.

## OPINION

### Facts & Procedural History

Jennifer Furnas Coleman ("Mother") and Marty Alan Coleman ("Father") were divorced on March 10, 2003. At that time, a Permanent Parenting Plan was in place, which provided that the parties' two minor children would have regular, unsupervised parenting time with Father. On June 9, 2006, Mother filed a Petition to Modify the Permanent Parenting Plan and to Temporarily Suspend Father's Parenting Time. As the ground for the modification, Mother alleged that Father was addicted to drugs and alcohol and was a danger to the children. Mother sought an immediate injunction against Father's parenting time, which the court granted on the same day that Mother filed her Petition. She also requested recovery of her reasonable attorney's fees, private investigator fees, and other suit expenses for having to bring the petition to protect the minor children's best interest. Attached to Mother's petition was an Affidavit of Complaint against Father for the illegal possession of cocaine and a positive drug screen of Father. Also included was an affidavit of Dr. Amy Beebe, a psychologist for one of the parties' minor children, wherein Dr. Beebe recommended that visitation between Father and the minor children be temporarily terminated. At the time Mother originally filed her petition, Jason Creech represented Mother. Mr. Creech was an associate attorney who had been practicing law for six years and billed $200.00 per hour for services.

According to Father, he acknowledged his problems with alcohol and drug abuse and made a settlement offer ("original settlement offer") so as to avoid litigating Mother's motion. The original settlement offer stated that Father would have supervised visitation with his children. It also provided that Larry and Anne Coleman (collectively, "Grandparents"), Father's parents, would serve as supervisors. Visitation would be terminated if Father failed to meet certain conditions, and would only be resumed upon Dr. Beebe's recommendation. Mother did not agree to the original settlement offer, which was signed only by Father, Father's counsel, and Grandparents.[1]

Trial for Mother's petition was set for June 20, 2006, but was rescheduled to July 20, 2006 by written order. In the written order, signed July 7, 2006, the trial court ordered that Father could have supervised parenting time.[2] On July 20, 2006, Father filed a response to Mother's petition. Father admitted that he had sought treatment for his alcohol and cocaine use, but denied that he had an ongoing addiction to cocaine and denied any continued cocaine use. He conceded that he had sought treatment for his substance abuse and that he had

---

[1]Later in the litigation, on May 13, 2008, Grandparents filed a Petition to Intervene and Be Joined as Indispensable Parties. Grandparents sought visitation with the minor children. Eventually, on September 14, 2011, counsel for Mother announced to the trial court that a settlement had been reached with regard to Grandparents' petition, and that the "grandparents['] petition will be dismissed with prejudice and each side is going to pay their [sic] own attorney fees."

[2]The Order states that it was entered upon "request of counsel for both parties."

relapsed after his treatment at the Betty Ford Center and after his treatment at Passages Treatment Center.[3] He further conceded he failed a drug test on April 26, 2006. He denied that the Parenting Plan should be amended. He requested that unsupervised visitation be reinstated pursuant to the Permanent Parenting Plan.

On July 17, 2006, Mr. Creech, Mother's counsel, deposed Father. He billed Mother 6.5 hours to prepare for and take Father's deposition. During the deposition, Father admitted numerous times to alcohol and drug use. He admitted he had a substance abuse problem involving alcohol, cocaine, and marijuana. He also admitted that he had consumed alcohol and driven with his minor children, and he admitted he had been arrested three times for driving under the influence. He further admitted he had taken his children to school late and that he had sent them to school without breakfast. He testified that, in December 2005, he was so hung over that the children could not wake him to take them to school.[4]

Based on evidence gathered from Father's deposition and from a private investigator, Mr. Creech later indicated that he was ready to proceed to trial at that time on Mother's petition. As of July 20, 2006, discovery had been completed, and the case was set to proceed to trial. At this time, Mother's legal expenses totaled approximately $16,277.80.

The case was not resolved as expected, however. Instead, on August 2, 2006, Mother hired David E. Caywood to take over representation of her case. Mr. Caywood wrote a letter to Father's counsel indicating he had been retained, acknowledging that the trial had been continued and reset for August 31, 2006, and stating that he would be prepared for trial on that date. At the time Mr. Caywood received the file, it included Mother's petition, Father's positive drug screen for cocaine, an affidavit of Dr. Beebe recommending suspension of visitation, a private investigator's report indicating Father's alcohol consumption at bars, Father's deposition, and the proposed consent order from Father.

The hearing on Mother's petition was again rescheduled for September 14, 2006. However, on September 14, 2006, Father's counsel presented a letter to the trial court from Dr. Thomas Bannister, Father's psychiatrist, who stated that Father was "acutely ill" and

---

[3]In January 2006, Father's prior counsel wrote to Mother's prior counsel that Father had returned from Passages Treatment Center in Malibu, California after successfully completing the program. She stated that "he seem[s] to be a new man."

[4]We do not include Father's admissions to embarrass or condemn him. However, we list Father's admissions in order to show Mother's knowledge of Father's illegal or dangerous activities so we may analyze whether fees to uncover more (and similar) information about Father's activities were justified.

unable to attend the September 14, 2006 hearing.[5] Father's counsel requested a continuance. Mother opposed the continuance and stated that she had an investigative report indicating that Father had been at a bar consuming alcohol on September 13, 2006 and did not appear acutely ill at that time. Still, the trial court continued the matter to September 27, 2006.

On September 21, 2006, Father's counsel requested another continuance because Father was leaving immediately for The Meadows, a treatment center in Arizona. Rather than resetting the hearing for another time, the trial court dropped the matter from its calendar and entered an order providing that it would be scheduled upon Father's return from The Meadows. In the interim, the trial court suspended Father's parenting time.

On November 22, 2006, Father filed a Motion to Appoint a Guardian *Ad Litem*. The trial court granted Father's motion on January 30, 2007. Linda Holmes was appointed Guardian *Ad Litem* ("GAL") and ordered to conduct an investigation upon the order's entry.

*Legal Fees Billed to Mother during Litigation*

Despite the fact that this case was scheduled to have been resolved, the dispute, and the legal fees associated with that dispute, were far from over. From August 2006 to April 2007, when the case was settled, the parties made several appearances before the trial court. Consequently, Mother incurred additional attorney's fees from Mr. Caywood, including his own time and the time of his associate and paralegal. For example, the parties argued over whether Father should be entitled to Christmas visitation with the children due to his continued alcohol use. Although Father admitted his alcohol abuse, Mother incurred over $35,000.00 in private investigator fees to surveil Father and report on his alcohol use. Mother explained the continued surveillance by stating that while Father sometimes admitted his alcohol use, he sometimes denied that he was abusing alcohol, and yet continued to seek visitation with the children.

Despite his appearance at a deposition when Mother was represented by Mr. Creech, Father was required to appear at a second deposition in April 2007. Mr. Caywood and his office billed over 120 hours in preparation for the deposition, and a total of 205.85 hours for legal services in April 2007, totaling $42,963.00. Father's deposition lasted under two hours. During this deposition, Father again admitted that he continued to consume alcohol and abuse drugs. Regardless, Mother resumed private investigation of Father.

---

[5]Shortly thereafter, on October 27, 2006, Mother filed a motion for Dr. Bannister to release all of Father's medical records. The parties ultimately entered a Consent Order on November 13, 2006 permitting the release of records.

After Father's deposition, the parties entered into a settlement agreement, which was similar to the original settlement offer that had never been accepted by Mother. Specifically, both the original settlement offer and the settlement agreement provided a series of conditions for Father to meet before being allowed visitation, and also provided that visitation could be terminated upon the recommendation of the children's psychologists.[6] The settlement agreement was announced on the record; however, the parties reserved the issue of attorney's fees and suit expenses. On July 27, 2007, a written Order Pertaining to the Best Interests of the Parties' Minor Children, which memorialized the parties' settlement, was entered *nunc pro tunc* to April 26, 2007. The order provided that each child's psychologist would determine what contact Father was to have with that particular child. Further, Father was ordered to comply with the recommendations of Dr. John McCoy, a specialist in the field of substance abuse. Father would also have to attend sixty Alcoholics Anonymous meetings in sixty days. On August 3, 2007, Mother filed her Petition for Suit Expenses. At this time, Mother's legal expenses totaled $49,594.74.

*Legal Fees Billed to Mother after Settlement*

From May 2007 until approximately February 2009, Mother incurred more fees while attempting to collect from Father the fees allegedly stemming from her original petition. Although the parties had reached a settlement in April 2007, Mr. Caywood's office continued to bill Mother for legal services allegedly related to suit expenses. Mr. Caywood's office also billed Mother monthly for legal services performed in May 2007 through February 2009 while the parties litigated the issue of attorney's fees and suit expenses. The hours of legal services performed during these months range from 1.05 hours to 97.15 hours per month. Mother was also charged for copying expenses during these months. In preparation for the hearing on Mother's legal expenses, Father retained an expert on attorney's fees in family law matters, Michelle Betserai.

Despite the fact that the parties had settled their dispute, in November 2007, March 2008, and June 2008, Mother again incurred fees related to the use of a private investigator. This time, the surveillance was not just limited to Father, but also to Father's counsel,

---

[6]One notable difference between the original settlement agreement and the settlement agreement actually entered is that, in the original settlement agreement, Grandparents were to serve as supervisors during Father's visitation. Because Father was not initially allowed visitation in the ultimate settlement until certain conditions were met, there was no requirement that Father's eventual visitation be supervised. Further, the original settlement agreement also provides that "Father may take the children out unsupervised, with the prior consent of his parents." Still, even with this agreement, which was not accepted by Mother, Father's visitation did not begin until he had successfully completed a series of treatments for his substance abuse.

ostensibly to show that Father's counsel improperly asked to reschedule a deposition.[7]

On October 30, 2008, the parties finally went before the Special Master for a hearing on the issue of attorney's fees and suit expenses. The total requested by Mother at this time was approximately $354,872.89. The hearing was reset for February 4, 2009 and eventually concluded on February 6. The following individuals testified at the hearing: Mr. Caywood, Mother's counsel; Dan Taylor and Dorothy Pounders, Mother's experts on attorney's fees; Michelle Betserai, Father's expert on attorney's fees; and Mother.

Mr. Caywood testified as to his fees and rates, and he also testified that the fees were justified because they were incurred protecting the best interests of the children. He testified that he attempted to have "paralegals and associates do as much of the work as I can . . . It's not economically feasible for me, for example, at 385 dollars an hour to be doing work that a paralegal, for example, in 2007 was being charged out at 135 dollars an hour." Mr. Caywood's testimony indicated that Father's admissions to substance abuse were not as clear as Father argues. In fact, Mr. Caywood testified that he did not

> see [Father as someone] who was in, or had much chance, of entering the phase of what they call a recovering alcoholic. . . . I am also receiving letters from his then attorney basically to the effect that Mr. Coleman had come back from one of these institutions and he was a changed person; he was going to go to these AA meetings.
>
> \* \* \*
>
> I told [Mother] we put surveillance on him because he said he was going to get around to addressing this problem; that he was going to do this, going to do that. You know, if he stopped drinking after that deposition and stayed out of those bars and done what he should have done, well, then he would have said, I did what I said I was going to do.

Mr. Caywood also testified about issues with the GAL, which he asserted caused Mother to incur additional attorney's fees. According to Mr. Caywood, the GAL had attempted to overhaul the parties' April 26, 2007 order, settling the issue of visitation. Mr. Caywood

---

[7]During a hearing in the trial court, Mr. Caywood stood by his decision to privately investigate Father's attorney; at oral argument on appeal, however, Mr. Caywood apologized for his behavior in the trial court.

explained: "So now everything that I had done in order to obtain for the benefit of these children that April 26, 2007 order, as far as the [GAL] is concerned, is down the drain, and the [GAL] approved the April 26 order and she was involved in the drafting of it . . ." Mr. Caywood's testimony expounded on the hardships he and Mother faced throughout the litigation, giving as an example several instances where Father attempted to regain his visitation rights. When Father attempted to regain some visitation, Father would state that he had been a great father to the children and had not engaged in questionable activity around the children, and then would subsequently check into a rehabilitation facility again or, in one case, be arrested for driving under the influence. To Mr. Caywood, Father's continuous battle with substance abuse could not be reconciled with his requests for visitation.

When Mother testified, she stated she was unsure of Mr. Caywood and his associate's rates. However, she still believed the ultimate bill for Mr. Caywood's services of over $350,000.00 was justified because it protected her children.

Ms. Betserai testified that the hours billed by Mr. Caywood's office were excessive and that the amount billed for private investigation fees was excessive in light of Father's admitted substance abuse.[8] On the other hand, Mother's experts Mr. Taylor and Ms. Pounders opined as to the reasonableness of Mr. Caywood and his associate's fees, but they did not opine on whether the number of hours billed was excessive. They also did not review the file and determine whether the final bill was reasonable.

During this time, before the Special Master issued his report, Mother made several attempts to disqualify the GAL and the court-appointed evaluator.[9] The trial court denied all of Mother's attempts. Mother also filed a Motion to Recuse the trial judge on April 22, 2009. On April 24, 2009, the matter was transferred from Chancellor Walter Evans to Chancellor

---

[8]Ms. Betserai made several misrepresentations during the hearing, which are undisputed on appeal. On July 20, 2012, the Board of Professional Responsibility of the Supreme Court of Tennessee suspended Ms. Betserai from the practice of law for two years. One of the reasons the Board suspended Ms. Betserai was for "misrepresentations made during testimony as an expert witness about belonging to a bar association and about her level of participation in an appeal." However, the Board's notice does not offer the name of the case in which Ms. Betserai made the misrepresentations.

[9]Mother filed a Motion to Disqualify the GAL  Linda L. Holmes  on April 2, 2009. However,  the record indicates that this is not Mother's first attempt to disqualify and discharge the GAL. On April 4, 2008 and July 28, 2008, Mother orally moved to disqualify the GAL. During the July proceedings, Mother suggested that the GAL had been biased toward Father's position as Father had paid the majority of the fees owed to the GAL by stating, "[H]e whose bread I eat his song I sing."

Arnold Goldin. The motion to recuse was granted by written order dated May 15, 2009.[10]

The Special Master entered his report on March 25, 2010, finding that Mother's request for attorney's fees and suit expenses was excessive. He awarded Mother a total of $124,824.05. In the Report of the Special Master, he found that the rates charged by Mr. Caywood and his associates to be reasonable. Ultimately, he reported that Mr. Caywood's total fees of $56,844.50 for 146.25 hours of legal services was reasonable. However, he reported that the "time billed by other personnel at the Caywood firm" amounted to a request by Mother of $217,263.00. The Special Master stated: "With little to no proof supporting this amount and considering the amount of the fees of [Mother's former counsel] and Mr. Caywood, the Special Master finds $5,000[.00] to be reasonable." The Special Master reported that Father should reimburse Mother in the following amounts:

| | |
|---|---|
| [Mother's former counsel, Mr. Creech] | $16,277.50 |
| [Mr. Caywood's firm] | $61,844.50 |
| Copying Fees | $1,000.00 |
| Court Reporter | $8,595.60 |
| Private Investigators | $37,106.45 |

Both Mother and Father filed objections to the Special Master's findings of fact and conclusions of law to the Chancery Court on April 8, 2010.

On January 27, 2011, the Chancery Court filed its Order Denying Mother's Objections and Granting in Part Father's Objections to the Report of the Special Master. In this order, the Chancery Court further reduced the award of fees to $42,277.50. In its order, the trial court stated:

> The history of this case is a long and tortuous one and the Court will not endeavor to chronicle it here. Moreover, the Court recognizes that there has been an ongoing conflict between not only the parties to this case but also between Mother's counsel and opposing counsel and the Guardian Ad Litem. This Court believes that this unfortunate conflict has caused Mother's counsel to use every litigation arrow in his quiver in pursuit of Mother's goals. Mother can certainly engage in such a strategy but she must recognize that she cannot expect the other side to

---

[10]Chancellor Evans stated that he was personally offended by the conduct of Mother's counsel as he continued to attack the GAL, the Attorney *Ad Litem*, Dr. Steinberg and everybody who he perceived held a contrary position to Mother.

pay for it.

Furthermore, the trial judge found that he did "not believe the vast majority of the fees and costs incurred were reasonable or necessary for purposes of requiring the opposing party to pay them in their entirety." Ultimately, the trial judge agreed with the Special Master that Mother's fees incurred by Mother's prior counsel in the amount of $16,277.50 were reasonable and should be paid by Father. The trial court found that the $37,106.45 for private investigator fees was "not justified" based on Father's numerous admissions regarding his continued substance abuse. The trial court also awarded an additional $25,000.00 to Mother in reasonable attorney's fees and expenses, which amount included deposition and copying fees, to compensate Mr. Caywood and his office for its work on Mother's case. Thus, the total amount awarded by the trial court for Mother's fees was $42,277.50.

## Issues Presented

Mother raises the following eight issues for review, as taken from her brief:

1. The trial Court erred in not dismissing and discharging the Guardian *Ad Litem*, Linda Holmes.

2. The trial Court erred in not dismissing and discharging Dr. Fred Steinberg, Court appointed evaluator.

3. The Trial Court erred in imposing sanctions on Mother which required her to pay attorney fees for Father.

4. The Trial Court erred in imposing sanctions on Mother which required her to pay attorney fees for Dr. Steinberg.

5. The Trial Court erred in imposing sanctions on Mother which required her to pay attorney fees for Linda Holmes[, the Guardian *Ad Litem*].

6. The Trial Court erred in imposing sanctions on Mother which required her to pay attorney fees for grandparents.

7. The Trial Court erred in quashing Mother's Notice to Take Deposition of Guardian *Ad Litem* pertaining to the fees the Guardian *Ad Litem* was seeking when there were 41 unchallenged or questioned entries in her Fee Affidavit. The

Court rules that counsel for Mother could only examine the Guardian *Ad Litem* for one hour at the hearing.

8. The Trial Court erred in setting the amount of attorney fees due Mother's counsel, David E. Caywood.

Father also raises three issues, as taken from his brief:

[1.] Whether the trial court erred when it awarded Mother $42,277.50 in attorneys' fees and suit expenses? []

[2.] Whether Mother's bad faith litigation conduct when reviewed in its totality should act as a complete bar to the recovery of attorneys' fees and suit expenses awarded to her? []

[3.] Whether Mother's appeal of all interlocutory orders related solely to the [Paternal] Grandparent's [sic] to Intervene and be Joined as Indispensable Parties that Mother settled with the Grandparents and thereafter entered an Order of Dismissal with Prejudice constitutes a frivolous appeal? []

### Briefing Requirements

As an initial matter, we must first discuss the deficiencies in Mother's brief. Briefs submitted to the Tennessee Court of Appeals are governed by Rule 27 of the Tennessee Rules of Appellate Procedure. It provides:

(a) Brief of the Appellant. The brief of the appellant **shall** contain under appropriate headings and **in the order here indicated**:

(1) A table of contents, with references to the pages in the brief;
(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
. . .
(4) A statement of the issues presented for review;
(5) A statement of the case, indicating briefly the

nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

\* \* \*

(i) Page limitations. Except by order of the appellate court or judge thereof, arguments in principal briefs **shall** not exceed 50 pages . . .

Tenn. R. App. P. 27 (emphasis added).

Despite the requirements of Rule 27, there are several deficiencies in Mother's brief to this Court. First, Mother's brief combines her facts and arguments section, which spans approximately fifty-five pages.[11] As discussed above, Rule 27 specifically requires that briefs

---

[11]On September 15, 2014, we granted Father leave to exceed the fifty-page limit placed on

(Continued...)

-11-

be divided into sections under appropriate headings. Mother's brief fails to meet this requirement. Second, because Mother combined her argument and facts sections in violation of Rule 27, the sections of Mother's briefs that she asserts contain her argument exceed the 50 page limit allowed by Rule 27(i). This Court has previously been faced with a similarly deficient brief. *See Freiden v. Alabaster*, No. 86186-2, 1990 WL 14562 (Tenn. Ct. App. Feb. 21, 1990), *perm. app. denied* (Tenn. June 11, 1990). In *Freiden*, the appellant's brief contained an argument section totaling 54 pages, and a facts section totaling 74 pages. *Id.* at *1. Moreover, appellant's statement of fact was "interlaced and intertwined" with arguments of counsel. *Id.* Relying on the well-settled principle that "appellate courts are not under a duty to minutely search a voluminous record to verify unsupported allegations[,]" the Court explained that:

> Applying this principle to the case at bar, this Court is of the opinion that where argument of counsel is so repeatedly intertwined with what might be considered statements of fact, it is not the responsibility of the Appellate Court to read such a brief so as to ferret out the facts from the argumentative statements in order to eliminate improperly included argument.

*Id.* Thus, the Court "substantially" disregarded appellant's statement of facts in favor of its own research and the facts supplied by the appellees.

Like the Court in *Freiden*, this Court might be inclined to overlook the deficiencies in Mother's brief, had the brief contained appropriate citations to authority. Here, the issues presented by Mother involve a multitude of arguments regarding the proper standard of performance for GALs and court-appointed evaluators, sanctions that may be imposed on a party, and various other issues; however, Mother's argument contains citation to only two cases,[12] both of which pertain to the standard of review for attorney's fees. In addition,

---

(....continued)
principal briefs. Additionally, on November 3, 2014, we granted leave for Mother's reply brief to exceed the twenty-five page limit. Mother was not granted leave to exceed the page limit on her initial brief, however.

[12]The standard of review section of Mother's brief contains additional citations related to the preponderance of the evidence standard. It is unclear, however, how the cited cases support Mother's argument, as no specific reference to a page number or relevant language is included in the citations. *See* Tenn. R. App. P. 27(h) (" Citation of cases must be by title, to the page of the volume where the case begins, **and to the pages upon which the pertinent matter appears** in at least one of the reporters cited.") (emphasis added). Furthermore, these cases are not cited in the table of authorities section of Mother's brief, as required by Rule 27. *See* Tenn. R. App. P. 27(a)(2).

despite the fact that Mother asserts that she is combining her argument and facts into one section, this section of her brief contains no citation to any relevant legal authority.[13] Instead, the only citation to relevant authority begins on page 77 of Mother's brief, where Mother discusses the applicable standard of review.

From our review of Mother's brief, no relevant legal authority is cited with regard to issues 1 through 7. First, Issue 1 concerns the dismissal of the GAL from the case. No legal authority is cited to support Mother's argument that the GAL acted improperly, or to support Mother's request to dismiss the GAL after the case had already been settled by agreement of the parties. The same is true regarding Issue 2, relative to the trial court's failure to dismiss the court-appointed evaluator.

Issues 3 through 6 concern Mother's assertion that she was required to pay certain fees in the trial court as sanctions. Mother's brief, however, cites no relevant authority regarding the award of sanctions. Moreoever, Mother's brief fails to point to an order of the trial court requiring Mother to pay any sanctions. Rule 6 of the Rules of the Court of Appeals of Tennessee specifically requires that an appellate brief contain a statement of the erroneous action of the trial court, as well as a specific reference to the record "where such action is recorded." Without such a reference, Rule 6 mandates that the alleged error will not be considered on appeal. *See* Tenn. R. Ct. App. 6(b) ("No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.").

Finally, Issue 7 concerns the trial court's alleged error in quashing Mother's scheduled deposition of the GAL. Again, Mother cites no legal authority regarding the trial court's authority to quash depositions, nor constructs any legal argument as to why this issue must be reversed, given that the parties reached a settlement agreement on the issue of Father's visitation, the crux of Mother's petition. It is well-settled in Tennessee that the "failure of a party to cite any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006). While we have thoroughly reviewed the prolific record,[14] both parties' principal

---

[13] This section of Mother's brief does contain a single citation to Rule 40A of the Tennessee Rules of the Supreme Court. However, this citation is merely in reference to a statement made by the trial court. Mother's brief contains no language from Rule 40A and no analysis as to how its provisions support Mother's arguments in this case.

[14] We note that the appellate record in this case consists of forty-three volumes of technical
(Continued....)

briefs, and both parties' reply briefs in this appeal, we remind litigants that "[j]udges are not like pigs, hunting for truffles buried in briefs." **U.S. v. Dunkel**, 927 F.2d 955, 956 (7th Cir. 1991). "It is not the function of the appellate court to research and construct the parties' arguments." **Id.** (citing **United States v. Berkowitz**, F.2d 1376, 1384 (7th Cir. 1991).

We recognize that there are times when this Court, in the discretion afforded it under Rule 2 of the Tennessee Rules of Appellate Procedure, may waive the briefing requirements to adjudicate the issues on their merits. This may occur on occasion when, for example, a party appeals *pro se* or when resolution of the case impacts innocent parties such as children. *See, e.g.,* **Chiozza v. Chiozza**, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (noting that the briefing requirements are more likely to be waived "in cases involving domestic relations where the interests of children are involved"); **Word v. Word**, 937 S.W.2d 931, 932 n.1 (Tenn. Ct. App. 1996) (addressing the merits of the appeal, despite failure to include statement of the issues, but affirming the majority of the trial court's rulings because there was no transcript of the evidence). Here, it appears that the issues regarding the children have long since been resolved and the only issues remaining concern squabbles among adults regarding financial matters. Accordingly, this is not the appropriate case to waive this Court's well-settled briefing requirements. Accordingly, Mother's Issues 1 through 7 are deemed waived for her failure to construct a legal argument or cite any relevant authority for those issues. *See* **Newcomb**, 222 S.W.3d at 401.

Turning to Mother's Issue 8, attorney's fees, Mother cites two cases demonstrating the standard of review for this issue. *See* **Wilder v. Wilder**, 66 S.W.3d 892 (Tenn. Ct. App. 2001); **Storey v. Storey**, 835 S.W.2d 593 (Tenn. Ct. App. 1992). Specifically, Mother concedes that the trial court's decision regarding attorney's fees is reviewed under an abuse of discretion standard. **Wilder**, 66 S.W.3d at 894; **Storey**, 835 S.W.2d at 597. Mother provides no law pertaining to her argument that the trial court abused its discretion in its award of attorney's fees. Indeed, in neither case cited by Mother did this Court rule that a trial court abused its discretion in finding that requested attorney's fees were excessive. **Wilder**, 66 S.W.3d at 894 (holding that the trial court erred in awarding a party any attorney's fees); **Storey**, 835 S.W.2d at 597 (affirming the trial court's award of attorney's fees). Under these circumstances, we will soldier on to consider Mother's argument regarding the award of attorney's fees, taking into account the limitations caused by her brief's deficiencies. *See* **Pandey v. Shrivastava**, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Jan. 24, 2013) (noting that, despite deficiencies in the record, we are sometimes able to "soldier on" to review a case upon its merits, where the issues are sufficiently clear).

---

(....continued)
record, thirty-nine transcripts of evidence, twenty-one depositions, and 128 exhibits. In sum, the record totals 136 volumes.

## Standard of Review

As previously discussed, we review the trial court's ruling on attorney's fees under an abuse of discretion standard. *See, e.g.*, ***Owens v. Owens***, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007). According to the Tennessee Supreme Court:

> The trial court's determination of a reasonable attorney's fee is 'a subjective judgment based on evidence and the experience of the trier of facts,' ***United Med. Corp. of Tenn., Inc. V. Hohenwald Bank & Trust Co.***, 703 S.W.2d 133, 137 (Tenn. 1986), and Tennessee has 'no fixed mathematical rule' for determining what a reasonable fee is. ***Killingsworth v. Ted Russell Ford, Inc.***, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. ***Kline v. Eyrich***, 69 S.W.3d 197, 203 (Tenn. 2002); ***Shamblin v. Sylvester***, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010); ***Keisling v. Keisling***, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, ***Williams v. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 55 (Tenn. 2006); ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party. ***Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008); *see also* ***Lee Med., Inc. v. Beecher*** 312 S.W.3d 515, 524 (Tenn. 2010).

***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011).

## Discussion

*Authority to Award Attorney's Fees*

Typically, Tennessee courts follow the American rule regarding attorney's fees and require litigants to pay their own attorney's fees unless there is a statute or contractual agreement[15] providing otherwise. *Taylor v. Fezell*, 158 S.W.3d, 359 (Tenn. 2005) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). Tennessee Code Annotated Section 36-5-103(c)[16] provides a statutory mechanism for the recovery of attorney's fees in certain situations. Section 36-5-103(c), in relevant part, provides:

> [T]he spouse or other person to whom custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change in custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). Thus, Tennessee Code Annotated Section allows a party to recover his or her "reasonable and necessary attorney's fees in cases involving child support modification" and custody. *Blankenship v. Cox*, No. M2013-00807-COA-R3-CV, 2014 WL 1572706, at *16 (Tenn. Ct. App. April 17, 2014) (citing *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001).).

Although subsection (c) appears to be limited to enforcing any decree for "alimony and/or child support, or . . . in regard to any suit or action concerning . . . custody," the statute has been applied to awards of attorney's fees to parties required to defend petitions to modify visitation. *See, e.g.*, *Pounders v. Pounders*, No. W2010-01510-COA-R3-CV, 2011 WL 3849493, at *4 (Tenn. Ct. App. 2011); *Demonbreun v. Demonbreun*, No. M2004-02105-COA-R3-CV, 2005 WL 3555545, at *8 (Tenn. Ct. App. Dec. 28, 2005) (opining that an award was authorized under the statute because visitation is "an obvious aspect of custody"); *see also Taylor v. Fezell*, 158 S.W.3d 352 (Tenn. 2005) (finding an award of attorney's fees appropriate when father sought to alter his parenting time). Furthermore, Father does not argue that Wife is not entitled to rely on Tennessee Code Annotated Section 36-5-103(c).

---

[15]We are unable to determine whether the parties made an agreement regarding attorney's fees when they divorced because the record on appeal does not include the parties' marital dissolution agreement. Thus, our Opinion deals only with the award of attorney's fees pursuant to statute.

[16]Interestingly, Mother's brief does not refer to this statute or any other authority that would permit her to seek attorney's fees.

Accordingly, we assume that Mother could rely on Tennessee Code Annotated Section 36-5-103(c) in seeking an award of attorney's fees. The question remains, however, as to whether the trial court abused its discretion in finding that Mother's requested attorney's fees were not reasonable and necessary. *See Echols v. Echols*, E2006-02319-COA-R3-CV, 2007 WL 1756711, at *7 (Tenn. Ct. App June 19, 2007) (equating reasonableness with a finding that fees were not excessive: "In all events, any attorney's fees awarded must be reasonable and not excessive.").

*Amount of Fees Awarded*

Both Mother and Father challenge the amount of attorney's fees the trial court awarded to Mother. As previously discussed, Mother incurred over $350,000.00 in legal expenses, all of which she requested reimbursed by Father. Of the more than the $350,000.00 requested by Mother, the trial court awarded her a total of $42,677.50, which includes compensation for the work performed by Mother's prior counsel, Mr. Caywood, and Mr. Caywood's office. As we perceive it, Mother's principal argument is that the trial court abused its discretion when it awarded less than the amount she requested because all of the fees were necessary to protect the minor children. Specifically, Mother argues, "This Court must understand that when an attorney is representing two young innocent children . . ., he or she has a tremendous burden on their [sic] hands. In these [] types of incidents, lives are on the line. . . . [T]he Chancellor put[] a price on their lives of $12,500[.00] a piece." She further provides: "Mother and her counsel acknowledge that the fees have been extremely large but that is not the fault of Mother. Father is the one who has the substance abuse problem[.] Father, his attorneys and the Guardian *Ad Litem* all believe that he is in a recovering state when he is not."

A party requesting attorney's fees carries the burden of establishing a claim for reasonable attorney's fees. *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988).Typically, to carry this burden, the party requesting attorney's fees produces an affidavit from the attorney who performed or supervised the work, or provides testimony from the attorney. *Hennessee v. Wood Grp. Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991); *Miller v. Miller*, 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010) (holding that the trial court abused its discretion when it awarded husband his attorney's fees despite husband's lack of an affidavit outlining the fees). A party opposing the fees request is entitled to cross-examine the requesting party's witnesses and to present its own proof. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992); *see also Miller*, 336 S.W.3d at 587 (holding that the trial court abused its discretion when it awarded husband his attorney's fees because wife lacked an opportunity to cross-examine husband's proof). It is important to note that the trial court need not have a "fully developed record of the nature of the services rendered" before awarding attorney's fees. *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988). This Court will

not reverse a trial court's award of attorney's fees merely because the record does not contain proof establishing the reasonableness of the fees. ***Kahn***, 69 S.W.3d at 210. The record must contain evidence that the award of fees was unreasonable before reversal is justified. ***Id.*** However, at a minimum, the record should contain an affidavit containing the attorney's hourly rate and time spent on the case. *See **Miller v. Miller***, 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010).

In ***Connors v. Connors***, 594 S.W.2d 672 (Tenn. 1980), our Supreme Court summarized the appropriate factors to consider when fixing a reasonable attorney's fee:

> 1. The time devoted to performing the legal service.
> 2. The time limitations imposed by the circumstances.
> 3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
> 4. The fee customarily charged in the locality for similar legal services.
> 5. The amount involved and the results obtained.
> 6. The experience, reputation, and ability of the lawyer performing the legal service.

***Id.*** at 676. Tennessee Rule of Professional Conduct 1.5 includes substantially the same relevant factors.

In this case, the trial court reduced the Special Master's recommendation of $124,824.05 in attorney's fees to $42,277.50. The trial court justified this reduction by stating that although "[a] party is entitled to the best representation they [sic] can retain," the trial court "does not believe that the vast majority of the fees and costs incurred were reasonable or necessary for purposes of requiring the opposing party to pay them in their entirety." Accordingly, the trial court found that the $37,106.45 in private investigator fees was not "justified as a transferable expense." Further, the trial court found that because "Father continued to defend in spite of an indefensible position," Mother was entitled to recoup her fees incurred by prior counsel, totaling $16,277.50, and some of her fees incurred by Mr. Caywood's office, totaling $25,000.00.[17] Thus, Mother's total award was $42,277.50.

Mother points to no specific errors in the trial court's judgment other than the

_____

[17]The award of $25,000.00 expressly includes deposition and copy costs.

reduction in the award attributable to non-attorneys[18] and associates. Taking the trial court's ruling in the light most favorable to it, we discern no abuse of discretion in the trial court's decision. First, the trial court pointed to specific facts justifying the reduction in fees. For example, Mr. Caywood wrote a letter to Father's counsel indicating that he would be prepared for trial shortly after Mother retained him, presumably based on Father's condemnatory admissions to his substance abuse. Despite the fact that Mother's original attorney believed that the matter was nearing conclusion,[19] an opinion that Mr. Caywood initially shared, Mother and Mr. Caywood proceeded to incur hundreds of thousands of dollars of additional fees and expenses. Furthermore, even though Father continued to admit his alcohol and drug use, Mother hired private investigators to follow Father.

In addition, although we have no doubt of Mr. Caywood's excellent representation, the results obtained by Mr. Caywood are similar to the settlement offer made by Father's prior counsel in 2006. Mr. Caywood admitted that he did not believe Father could comply with the original settlement offer, and, accordingly, this non-compliance would ultimately cause his parenting time to be suspended, the exact outcome that Mother desired. Despite this, Mother did not accept the original settlement offer. Mother continued to incur legal expenses and attorney's fees litigating her petition, resulting in a somewhat similar settlement agreement, wherein Father's visitation was conditioned on his ability to comply with certain requirements. While similar results obtained at trial are not always indicative that a fee is unreasonable, this fact does tend to show that the parties' positions were not so diametrically opposed as to require hundreds of thousands of dollars of legal fees to reach an agreement.

Moreover, it appears that much of Mother and Mr. Caywood's dispute with the GAL and court-appointed evaluator occurred after the parties had settled the underlying dispute in this case. Nothing in Mother's brief indicates why fees related solely to this dispute were either reasonable or necessary to a resolution of the issues in this case, or should be borne by Father, when they appear to have had no effect on the ultimate resolution of the case, which was determined not by the court but by an agreed settlement. Finally, the trial court noted that

---

[18]It is unclear from Mother's brief whether she also challenges the trial court's decision not to order Father to reimburse Mother for any private investigator fees. Specifically, Mother's Issues Presented only requests reversal of the trial court's decision regarding Mr. Caywood's attorney's fees. Regardless, we analyze any fee award pertaining to Mother's private investigators under an abuse of discretion standard along with the other legal expenses requested by Mother.

[19]At his deposition, Mr. Creech testified that no further investigation was necessary to proceed to trial because he "had just had a deposition a couple of weeks before, and I think it was pretty clear [Father] had a drug and alcohol problem, which he was minimizing greatly. So I felt that we were prepared for the hearing on July 20, 2006." Despite Father's admissions, Mother's counsel stated that "the problem is he continued to want to have visitation. We could never reach an agreement."

-19-

Mother's counsel's litigation strategy added to the dispute in this case. These facts, along with Mother's often duplicative filings against various attorneys and doctors appointed in the case, demonstrate to this Court that the trial court did not abuse its discretion in declining Mother's request for reimbursement for over $350,000.00 in legal expenses.

Still, we disagree with Father that all of Mother's fees were unreasonable. For example, Father's prior counsel indicated by letter that Father had become a "new man" during one of his attempts at recovery. Thus, there does appear to have been some dispute as to whether Father was still abusing drugs and alcohol. In addition, Father continually sought more visitation with the children, despite admitting to abusing alcohol. Father's statement from his brief that there is "no difference between the practical effects of the two orders[, the original settlement order and the final settlement agreement]" is slightly disingenuous. The original settlement order permits supervised visitation upon Father's completion of treatment; however, the settlement agreement actually entered does not permit visitation, even upon completion of treatment, until the psychologist treating the children determines it is in the children's best interest. Consequently, it was reasonable and necessary for Mother to incur some additional attorney's fees after Mr. Caywood was retained to protect her children's best interests by procuring an order satisfactory to her. However, we agree with the trial court that "Mother can certainly engage in such a strategy but she must recognize that she cannot expect the other side to pay for it." As such, we have also considered whether the fees were necessary, especially in light of the admissions that Father could not have complied with the original settlement agreement. We cannot conclude that the trial court abused its discretion when it ordered Father to pay Mother for at least some of her incurred legal expenses.

*Misconduct as a Bar to Recovery of Attorney's Fees*

In addition to his argument that Mother's fees were unreasonable, Father argues that her "litigation crusade of hiring private investigators to find out what she already knew, her hostility towards all counsel involved, and the unnecessary and unreasonable filings with the Court . . . were not done in order to protect the Children but was born out of hostility towards Father." Father points out that the trial court in its oral ruling specifically cited Mother's vexatious litigation strategy and the brusque, accusatory statements of her counsel. Father acknowledges that the trial court did not award all of the attorney's fees she sought, but argues that her fees were not reduced nearly enough to discourage such litigation tactics. Father argues that: "[D]ue to Mother's vexatious, bad faith and harassing litigation strategy, the Court should reverse the award of attorneys' fees and suit expenses in its entirety."

Father cites *Pizzillo v. Pizzillo*, 884 S.W.2d 749 (Tenn. Ct. App. 1994) for the proposition that when a parent furthers litigation based on hostility toward the other parent,

and not based on the child's best interest, the parent's attorney's fees should not be awarded. In *Pizzillo*, the Court of Appeals held that the "probate court's award of attorney's fees and costs was not just and equitable." *Id.* at 757. Opining that "a large portion of the litigation . . . was brought about by Ms. Pizzillo's desire to vindicate her position," *id.*, we determined that Husband should still pay for a small portion of the work done as he had also contributed to the ongoing litigation, but that Ms. Pizzillo should be responsible for the majority of her own expenses. *Id.* We do not agree with Father that the Court's holding in *Pizzillo* justifies a total bar to Mother's recovery here. Indeed, although Ms. Pizzillo was determined to have engaged in vexatious litigation tactics, the Court still concluded that she was entitled to $1,000.00 to help defray some of her costs.[20]

Although not cited by either party, we find *Andrews v. Andrews*, 344 S.W.321 (Tenn. Ct. App. 2010) consistent with the facts of the case-at-bar. In *Andrews*, we held that the trial court did not abuse its discretion when it awarded the wife $186,000.00 of her requested $302,714.00 in attorney's fees and awarded her $15,000.00 of her requested $64,786.00 in discretionary costs. Dr. Andrews, the husband, argued that the trial court abused its discretion when it partially awarded Ms. Andrews' fees, "given Wife's 'egregious' litigation strategy." *Id.* at 344. Similar to the case at bar, Dr. Andrews also noted Ms. Andrews' "long war against the GAL, and later the [Attorney *Ad Litem*], unreasonably escalated the legal expenses in this case" and resulted in Ms. Andrews lodging personal attacks against the GAL. Also similar to Husband in the instant case, Dr. Andrews pointed out that the trial court specifically reprimanded Ms. Andrews for her litigation strategy. The *Andrews* Court indicated that Tennessee law does allow a trial court to consider a party's decision to engage in litigation tactics calculated to produce delay and increase costs when it considers whether awarding attorney's fees is appropriate. *See, e.g.*, *Hall v. Hall*, No. E2007-02564-COA-R3-CV, 2008 WL 4613961, at *1 (Tenn. Ct. App. Oct. 15, 2008) (citing *Bauer v. Bauer*, No. M2001-00266-COA-R3-CV, 2002 WL 256802, at *2 (Tenn. Ct. App. Feb. 22, 2002); *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997); *Gilliam v. Gilliam*, 776 S.W.2d 81, 86–87 (Tenn. Ct. App. 1988)) (upholding award of attorney's fees against husband because of his litigation tactics).

Although it observed that "Husband's arguments regarding Wife's litigation choices are not without merit,"[21] the *Andrews* Court explained that the abuse of discretion standard

---

[20]The probate court originally ordered Mr. Pizzillo to pay $6,662.87 in discretionary fees and $5,662.50 for Ms. Pizzillo's legal expenses. *Id.* at 757.

[21] The major dispute in both *Andrews* and this case involved a GAL. According to *Andrews*: "Early in the litigation, Wife adopted a pugnacious posture *vis-a-vis* a GAL who was acting at the behest of the court. It cannot be said that either Wife or her attorneys sought to minimize conflict. Her financial
(Continued....)

did not permit it to substitute its judgment of the record on appeal for the judgment of the trial judge who presided over the case. *Andrews*, 344 S.W.3d at 348. As such, Ms. Andrews, although the trial court found she had engaged in vexatious litigation tactics, was still able to collect some of her reasonable attorney's fees. Indeed, the trial court in the case at bar had sufficient justification to award a portion of Mother's requested attorney's fees. After reviewing all of the voluminous record and the trial court's order, we cannot conclude that the trial court abused its discretion by declining Father's request to bar Mother's recovery.

*Frivolous Appeal Damages*

Finally, we address Fathers's request for frivolous appeal damages. Father argues he is entitled to frivolous appeal damages based on Mother's "appeal of the interlocutory orders arising out of the Grandparents' Petition to Intervene." Tennessee Code Annotated Section 27-1-122 states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. *See Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (citing *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978)).

As noted above, the issues raised by Mother on appeal are reviewed for an abuse of discretion, a particularly high standard of review. *Williams v. Williams*, 286 S.W.3d 290, 297–98 (Tenn. Ct. App. 2008). We have determined that the trial court's award to Mother was justified for several reasons. We have also determined that aspects of Mother's appeal were completely waived due to her failure to cite any authority or otherwise comply with the Tennessee Rules of Appellate Procedure. Such "[f]ailure to cite any evidence or rule of law entitling the appealing party to relief is one indicator that the appeal may be frivolous." *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); *see Wells v. Sentry Ins. Co.*,

---

(....continued)
positions were consistently excessive and she resisted compromise on even minor parenting issues." *Andrews*, 344 S.W.3d at 345–46.

-22-

834 S.W.2d at 938–39. Because Father was forced to respond to Mother's issues numbers 1 through 7, despite her waiver of such issues due to deficient briefing, we find that Father is entitled to frivolous appeal damages for his expenses incurred responding to these waived issues. We remand this matter to the trial court to evaluate Father's fees incurred responding to issues 1 through 7.

All remaining issues are pretermitted.

**Conclusion**

The judgment of the Shelby County Chancery Court is affirmed and this cause is remanded for further proceedings consistent with this Opinion and for the determination of Father's reasonable and necessary attorney's fees incurred in responding to waived issues in this appeal. Costs of this appeal are taxed to Appellant Jennifer Furnas Coleman and her surety.

_____
J. STEVEN STAFFORD, JUDGE